[Cite as *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision,* 123 Ohio St.3d 268, 2009-Ohio-4975.]

COLONIAL VILLAGE, LTD., APPELLANT AND CROSS-APPELLEE, *v.*

WASHINGTON COUNTY BOARD OF REVISION ET AL.,

APPELLEES AND CROSS-APPELLANTS.

COLONIAL TERRACE APARTMENTS, APPELLANT AND CROSS-APPELLEE, *v.*

WASHINGTON COUNTY BOARD OF REVISION ET AL.,

APPELLEES AND CROSS-APPELLANTS.

COLONIAL TERRACE APARTMENTS II, APPELLANT AND CROSS-APPELLEE, *v.*

WASHINGTON COUNTY BOARD OF REVISION ET AL.,

APPELLEES AND CROSS-APPELLANTS.

**[Cite as *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision,***

**123 Ohio St.3d 268, 2009-Ohio-4975.]**

*Real estate taxation — Valuation of subsidized housing — BTA's duty to make*
*independent valuation — Burden of proof on appeal to the BTA —*
*Multiple tax years and consistency — Law-of-the-case doctrine.*

(Nos. 2008-0443, 2008-0559, 2008-0560, and 2008-0561 — Submitted
August 11, 2009 — Decided September 29, 2009.)

APPEALS AND CROSS APPEALS from the Board of Tax Appeals, Nos. 2004-A-574,
2005-A-987,
2005-A-992, and 2005-A-993.

_____

**Per Curiam.**

{¶ 1} The appellants and cross-appellees in these consolidated appeals
are affiliated entities that own adjacent tracts of federally subsidized low-income
housing in Washington County. In *Colonial Village Ltd. v. Washington Cty. Bd.*
*of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298 ("*Colonial*
*Village* I"), we reviewed the determination of value for tax year 2003 rendered by

the Board of Tax Appeals ("BTA") for one of the tracts at issue. In that case, the BTA had found that the owner's appraisal did not constitute probative evidence of value, and as a result, it adopted the value assigned by the auditor and affirmed by the Washington County Board of Revision ("BOR"). On appeal, we reversed and remanded. Relying on the property record card, we concluded that the auditor had valued the property based on a cost approach, and we held that the BTA had contravened our precedents by using a cost valuation, given the entire record in the case.

{¶ 2} The BTA's decisions in the consolidated cases before us demonstrate the influence of our holding in *Colonial Village* I. The first of the consolidated cases, No. 2008-0443, addresses the BTA's decision on remand of *Colonial Village* I. The second, No. 2008-0559, concerns the very same tract but addresses the valuation for tax year 2004. The third and fourth appeals, Nos. 2008-0560 and 2008-0561, concern the value of two separate tracts improved with government-subsidized housing that are owned by different but affiliated entities. The tax year at issue in Nos. 2008-0560 and 2008-0561 is 2004.

{¶ 3} For convenience, we will refer to No. 2008-0443, which addresses the BTA's decision after we remanded in *Colonial Village* I, as the "2003 tax-year case" or more simply the "2003 case."[1] We will also refer collectively to Nos. 2008-0559, 2008-0560, and 2008-0561 as the "2004 tax-year cases" or more

---

1. When a case has been appealed from the BTA to a court and the court has remanded to the BTA, we have observed that the BTA's "order following the mandate" of the court was "not a final determination to be appealed under R.C. 5717.04." *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1994), 70 Ohio St.3d 344, 346, 639 N.E.2d 25, citing *Rowland v. Lindley* (1979), 58 Ohio St.2d 15, 12 O.O.3d 8, 387 N.E.2d 1367 (the "journal entry which the Tax Commissioner issues only in order to carry out the expressed mandate of this court is not a final determination within the purview of R.C. 5717.02"). These cases cause no concern about our jurisdiction over No. 08-443, however, because we have not hesitated to entertain an appeal from a later BTA decision if that appeal contests additional findings and conclusions that the BTA rendered pursuant to the remand order. See *United Tel. Co. of Ohio v. Tracy* (1999), 84 Ohio St.3d 506, 705 N.E.2d 679 (noting that the case "is again before the court after having been reversed and

simply the "2004 cases." As for the three different but affiliated property owners, we will use the term "Colonial" to refer to all of them collectively and each of them individually.

**The 2003 tax-year case**

{¶ 4} As noted, the 2003 case – No. 2008-0443 in this court – calls upon us to review the BTA's decision after remand of *Colonial Village* I. Our instruction to the BTA was to perform an independent valuation of the property based on the evidentiary record that had been developed in the case. The evidence before the BTA did not change. First, Colonial had presented to the BOR an owner's opinion of value consisting of an income approach, along with the testimony of Colonial's Randall Palmer. Second, Colonial had presented the testimony and appraisal report of Charles Snyder to the BTA.

{¶ 5} The owner's opinion of value notes that the improvements constitute a Section 8 federally subsidized housing project where tenants pay 30 percent of their adjusted gross income as rent, with the federal government paying the remainder of a specified monthly rental fee. The federal government also specifies a utility allowance that helps pay utility bills, and the amount of these allowances is paid to Colonial to be remitted to the tenants. At Colonial Village, each apartment is separately metered, and tenants pay electric bills separately, but other utilities are apparently provided by the landlord. There are a total of 45 apartments, of which 35 are two-bedroom and 10 are three-bedroom units.

{¶ 6} In *Colonial Village* I, we briefly summarized the valuation methods pursued by both the owner's opinion of value at the BOR and the appraisal at the BTA. *Colonial Village* I, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 17, 18. As for the owner's opinion of value, the BOR's technical advisors stated that (1) the capitalization rate was "too high," and (2) the

---

remanded to the [BTA] in *United Tel. Co. of Ohio v. Limbach* (1994), 71 Ohio St.3d 369, 643 N.E.2d 1129").

expenses were "not based on market" and were "not realistic." On appeal, the BTA impugned Snyder's sales-comparison approach by faulting (i) the appraiser's limited inspection of the comparables, (ii) the disparate use of location adjustments, and (iii) the extrapolation from five comparables, of which three were determined to be valued at over $24,000 per unit, to a value of $22,000 per unit for Colonial Village. With respect to the income approach, the BTA found that both the vacancy-loss figures and the expense estimate lacked factual support. Because of these flaws, the BTA found the appraisal unreliable, and it affirmed the county's valuation of the property.

{¶ 7} As noted, we reversed in *Colonial Village* I because, based on our reading of the property record card, we determined that the county had used a cost-based approach, which is inappropriate for government-subsidized properties. *Colonial Village* I, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 19, 22. As we have more recently explained, our subsidized-housing case law seeks to prevent the affirmative benefits of government subsidies from unduly inflating the value of the property for tax purposes. *Woda Ivy Glen Ltd. Partnership v. Fayette Cty. Bd. of Revision*, 121 Ohio St.3d 175, 2009-Ohio-762, 902 N.E.2d 984, ¶ 29. Reliance on a cost approach tends to run afoul of this precept because the subsidies allow developers to incur costs that ordinary market rents would not support. See *Oberlin Manor, Ltd. v. Lorain Cty. Bd. of Revision* (1989), 45 Ohio St.3d 56, 57, 543 N.E.2d 768. Nor have such subsidies been understood as pertaining directly to the value of the realty – we have excluded consideration of the effect the subsidies have on value on the theory that they constitute an "encumbrance" that should be disregarded, or alternatively, because they appear to constitute separable intangible benefits accorded in connection with the government program. Compare *Alliance Towers, Ltd. v. Stark Cty. Bd. of Revision* (1988), 37 Ohio St.3d 16, 523 N.E.2d 826, paragraph one of the syllabus, with *Woda Ivy Glen*, ¶ 29, fn. 4. Additionally, we discerned in *Colonial*

*Village* I that the record contained sufficient evidence to permit the BTA to perform an independent valuation, thereby obviating the need to adopt a cost-based approach. Id., ¶ 24.

**{¶ 8}** On February 1, 2008, the BTA issued its decision on remand in the 2003 tax-year case. In that decision, the BTA carried out this court's instruction by (1) marshaling evidence from the record whose validity had not previously been impugned and (2) deriving an income approach from that evidence. *Colonial Village Ltd. v. Washington Cty. Bd. of Revision* (Feb. 1, 2008), BTA No. 2004-A-574, at 11. The BTA's income approach derives the gross potential income, reserves for replacement, and capitalization rates from the Snyder appraisal, and the vacancy and collection loss from the owner's opinion of value. Id. After computing net operating income and applying the capitalization rate and a tax additur, the BTA derived a rounded figure of $1,171,930. The BTA then subtracted $9,000 for furniture, fixtures, and equipment and concluded that the value was $1,162,930. Id.

**{¶ 9}** Both Colonial on appeal and the county on cross-appeal characterize the BTA's valuation as unsupported by the evidence. We address their objections as follows.

**{¶ 10}** First, Colonial states that the 40 percent expense ratio used by the BTA lacks support. We disagree. The BTA forthrightly stated that it derived the ratio by examining the expenses associated with properties "that appear to be similar to the subject in size, configuration, and age, as contained in [Snyder's appraisal] report under the sales comparison and the capitalization rate section." *Colonial Village* (Feb. 1, 2008), BTA No. 2004-A-574, at 11, fn. 3. Snyder's appraisal report discloses the data to which the BTA refers and bears out the propriety of the figures that the BTA used. In particular, two properties appear on both the list of Snyder's sale comparables and the capitalization-rate determination. The expense ratios for those two are 37 percent and 42.2 percent.

Additionally, these two parcels have expense ratios that are close to the highest and lowest on the list of properties in the capitalization-rate section.

{¶ 11} Accordingly, the 40 percent figure that the BTA adopted is supported by the information adduced in the very appraisal report upon which Colonial itself would have the BTA rely. See *AP Hotels of Illinois, Inc. v. Franklin Cty. Bd. of Revision*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 16 (even where appraiser's conclusion of value could not be used, his certification of the truth of statements of fact in the appraisal report justified the BTA in treating those statements as evidence). Indeed, as between the BTA's estimation and the analysis of Colonial's appraiser (who derived what amounted to a 51 percent expense ratio from actual expenses provided by the owner), the BTA's number certainly appears to be the more tenable of the two. See *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision* (Apr. 21, 2006), BTA No. 2004-A-574, at 7, reversed and remanded, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298.

{¶ 12} Second, Colonial faults the BTA for not adopting Snyder's vacancy- and collection-loss figure. This argument is barred by the law-of-the-case doctrine: the BTA already decided that Snyder's 8 percent figure lacked credibility, and we deferred to that finding on appeal. *Colonial Village* (Apr. 21, 2006), BTA No. 2004-A-547, at 7, reversed and remanded on other grounds, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 18, 19; see *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1994), 70 Ohio St.3d 344, 345, 639 N.E.2d 25. In carrying out the instruction of this court on remand, the BTA looked to other evidence in the record: the owner's opinion of value that Colonial presented to the BOR. From that document, the BTA derived the 5 percent figure it used in its February 1, 2008 decision. *Colonial Village* (Feb. 1, 2008), BTA No. 2004-A-574, at 11, fn. 2. That action by the BTA in no way qualifies as unreasonable or unlawful under the circumstances.

6

**{¶ 13}** Third, Colonial similarly argues that the BTA should ignore its previous ruling and adopt Snyder's sales-comparison approach for 2003. Once again, the law-of-the-case doctrine bars this argument.

**{¶ 14}** Fourth, Colonial in various places argues that the record and disposition of the 2004 tax-year cases should affect the disposition of the 2003 tax-year case. In particular, Colonial compares the expense ratios for tax year 2003 and 2004 and argues that the 2003 tax-year determination must be incorrect in light of that comparison. These objections are mistaken. Quite simply, the record developed in the 2004 tax-year cases differs from the record in the 2003 tax year case – and the evidence adduced for one tax year may not be considered with respect to another year if it is not made a part of the record in the case pertaining to that other year.

**{¶ 15}** Indeed, we have recently had occasion to consider and reject the argument that the BTA's determination of value as to one tax year is subject to legal constraints of consistency to its determination of value as to other tax years. *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 19, 23–25. Of particular importance is our holding that "[a]s a matter of both case law and elementary principles, each tax year should be determined based on the evidence presented to the assessor that pertains to that year." Id., ¶ 20. This holding of *Olmsted Falls* bars many of Colonial's contentions in its appeal from the BTA's decision regarding the 2003 tax year.

**{¶ 16}** Like Colonial, the county lodges sweeping objections to the BTA's determination of value for the 2003 tax year. All of these objections run afoul of the law-of-the-case doctrine: quite simply, the BTA carried out our explicit instruction for tax year 2003, and the county's attempt to return to the status quo before our *Colonial Village* I decision has no legal basis. Moreover, to the extent

that the county asks us to overrule *Colonial Village* I, we decline to do so because the decision correctly applied the law to the record before us in that case.

{¶ 17} For the foregoing reasons, we find that the BTA acted reasonably and lawfully in carrying out our instruction on remand. We therefore affirm the BTA's decision in No. 2008-0443.

**The 2004 tax-year cases**

*A. The evidentiary record*

{¶ 18} The record in the 2004 tax-year cases differs from the record in the 2003 tax-year case. Both at the BOR and at the BTA, the 2004 cases were tried on a consolidated basis. The owners offered three appraisal reports, one for each of the properties, along with the testimony of Charles Snyder at the BOR. After the BOR rejected the owner's position in each of the 2004 cases, the owners appealed to the BTA, which held a hearing on August 14, 2006. Colonial subpoenaed the BOR's consultant, Fred W. Westbrook, to the hearing and examined him as on cross-examination.

{¶ 19} Westbrook was executive vice president of Barry R. Ankney, Inc., and in that capacity served as the overall project manager for Washington County's 2004 revaluation of real property. Of greatest significance for the 2004 tax-year cases is Westbrook's testimony that although the county's appraisal of Colonial's properties is set forth as a cost approach on the property record cards, the actual underlying approach reflects a "composite of those three approaches," that is, sales-comparison, income, and cost. More specifically, Westbrook testified that the valuation of the Colonial Village tract for the 2004 tax year constituted a mix of "market" and cost approaches, whereby the "market" approach constitutes an income approach. As for Colonial Terrace and Colonial Terrace II, Westbrook's testimony establishes that an income approach constituted the sole approach as to those tracts for tax year 2004.

8

*B. Because the record in the 2004 tax-year cases showed that*
*the county did not rely exclusively on a cost approach,*
*the BTA erred in regarding Colonial Village I as controlling*
*its disposition of the 2004 cases.*

**{¶ 20}** In evaluating the record in the 2004 tax-year cases, the BTA plainly accorded controlling significance to our decision in *Colonial Village* I. In each case, the BTA devoted an abbreviated review to the appraisal of Charles Snyder that Colonial presented to the BOR, identified certain deficiencies in the appraisal, cited *Colonial Village* I, and proceeded to perform an independent income-approach valuation of the tract at issue. Although the BTA in each of the 2004 cases recited the testimony of Fred Westbrook, the BTA attached no particular significance to it.

**{¶ 21}** As part of its cross-appeal, the county contends that the BTA erred in the 2004 tax-year cases because "[t]here was no 'trigger' as set forth in [*Colonial Village* I] that would authorize or allow the BTA to create its own value for the three properties." By "trigger," the county refers to our determination in *Colonial Village* I that "the record in this case contains sufficient evidence to trigger the BTA's duty to undertake an independent valuation of the property." *Colonial Village* I, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 24. We agree in part with this contention: unlike the situation in the 2003 tax-year case, the BTA's duty to perform an independent valuation was *not* triggered in the 2004 tax-year cases. That is so not because of the quantum of appraisal evidence presented by Colonial, but because the record in the 2004 cases – unlike the record in the 2003 tax-year case – establishes that the county did not rely exclusively on a cost-based valuation.

**{¶ 22}** Our reasoning on this point begins with our decision in *Colonial Village* I, in which we relied upon an analysis of the case law that is more fully set forth in our contemporaneous decision in *Dayton–Montgomery Cty. Port Auth. v.*

*Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22. In *Dayton–Montgomery*, the taxpayer contested the auditor's cost-based determination of value and presented actual-cost evidence that (1) corroborated the initial figure the auditor arrived at by consulting his cost schedules but that (2) tended to negate the auditor's use of a 1.6 "grade factor adjustment" that increased the valuation by 60 percent. *Dayton–Montgomery*, ¶ 13, 14. The BTA held that the actual-cost analysis was incomplete, and because the board of revision had not explained its decision to order a modest departure from the auditor's determination, the BTA adopted the auditor's valuation that used the 1.6 grade factor. On appeal, we reversed.

**{¶ 23}** In *Dayton–Montgomery*, we acknowledged the rules that usually apply. The first rule is that the party challenging the board of revision's decision at the BTA has the burden of proof to establish its proposed value as the value of the property. *Dayton–Montgomery*, ¶ 15; *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision* (2001), 90 Ohio St.3d 564, 566, 740 N.E.2d 276 ("When cases are appealed from a board of revision to the BTA, the burden of proof is on the appellant, whether it be a taxpayer or a board of education, to prove its right to an increase or decrease from the value determined by the board of revision"). The second rule is that the board of revision (or auditor) bears no burden to offer proof of the accuracy of the appraisal on which the county initially relies, with the result that the BTA is justified in retaining the county's valuation of the property when an appellant fails to sustain its burden of proof at the BTA. *Dayton–Montgomery*, ¶ 15; *Simmons v. Cuyahoga Cty. Bd. of Revision* (1998), 81 Ohio St.3d 47, 48, 689 N.E.2d 22 (failure to sustain burden of persuasion justified approving the board of revision's valuation of the property even though the county offered no proof of the validity of its determination); *W. Industries, Inc. v. Hamilton Cty. Bd. of Revision* (1960), 170 Ohio St. 340, 342, 10 O.O.2d 427, 164

N.E.2d 741 (a taxpayer who appeals to the BTA "is not entitled to the deduction claimed merely because no evidence is adduced contra his claim").

{¶ 24} In spite of these general principles, *Dayton–Montgomery* came within a narrow exception to their usual application. We discerned that exception in *Amsdell v. Cuyahoga Cty. Bd. of Revision* (1994), 69 Ohio St.3d 572, 635 N.E.2d 11, and *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 665 N.E.2d 1098. In both of those cases, as in *Dayton–Montgomery*, the developed record before the BTA affirmatively negated the validity of the county's valuation of the property. See also *AP Hotels*, 118 Ohio St.3d 343, 2008-Ohio-2565, 889 N.E.2d 115, ¶ 17, 18 (affirmative evidence of owner's appraiser that September 11 terrorist attacks had depressed demand for hotel rooms negated the county's valuation).

{¶ 25} In *Colonial Village* I, we confronted the same type of situation: the property record card affirmatively indicated that the county had relied on a cost-based approach in valuing the property, and our precedent disfavored the cost approach in the valuation of government-subsidized properties. *Colonial Village* I, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 19, 20. This conflict triggered the legal duty of the BTA to determine whether the record as developed by the parties contained sufficient evidence to permit an independent valuation of the property. We concluded that it did and directed the BTA on remand to perform such a valuation.

{¶ 26} Reciting this background allows us to articulate the BTA's error in deciding the 2004 tax-year cases. Because the uncontroverted testimony of Fred Westbrook established that the county did *not* rely exclusively on a cost-based approach for any of the tracts in tax year 2004, the exception that applied in *Dayton–Montgomery* and *Colonial Village* I does not apply to the 2004 tax-year cases. Quite simply, there was no impediment in the 2004 cases for the BTA to

approve the BOR's determination of value if it found that Colonial had failed to discharge its burden to show the value of the property.

{¶ 27} Moreover, our review of the BTA's decisions in Nos. 2008-0559, 2008-0560, and 2008-0561 leads us to conclude that the error we have just identified pervaded the decisions and truncated the BTA's consideration of the appraisal evidence offered by Colonial at the BOR. Because of this, we conclude that the proper course of action is to vacate the BTA's decisions in Nos. 2008-0559, 2008-0560, and 2008-0561 and remand to the BTA. Additionally, this disposition renders moot the more specific objections raised by Colonial and the county to the BTA's decisions in the three cases.

*C. On remand, the BTA has authority to determine the probative value of the evidence before it for each tax year, and the county does not have the burden to prove the accuracy of the appraisal upon which it relies.*

{¶ 28} It is important in this context to clarify that the BTA on remand possesses plenary authority to review the decisions of the BOR and determine the value of the property in the 2004 cases. In this regard, the first point is the one just made: there is no legal bar to the BTA's approving the BOR's valuation in those cases.

{¶ 29} Second, in the 2004 tax-year cases, the BTA is not bound by law to arrive at the same conclusions concerning the probative value of Snyder's appraisal that it reached in the 2003 case. We recently rejected the contention that a legal constraint of consistency binds the BTA as to how it evaluates evidence from one tax year to the next. *Olmsted Falls Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 122 Ohio St.3d 134, 2009-Ohio-2461, 909 N.E.2d 597, ¶ 24, 25. That principle will apply to the BTA's consideration of the 2004 tax-year cases on remand.

**{¶ 30}** Moreover, we reiterate that the county does *not* have the affirmative burden to establish as a general matter the accuracy of any appraisals that underlie its valuation of the property. See *W. Industries, Inc.*, 170 Ohio St. 340, 342, 10 O.O.2d 427, 164 N.E.2d 741. In *Colonial Village* I, the county's omission consisted not in failing to discharge such a burden, but merely in failing to show that the property record card was wrong in indicating exclusive reliance on a cost approach. See *Colonial Village* I, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298, ¶ 22, fn. 2. Accord *Dayton–Montgomery*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 30 (county auditor could have prevailed by showing the basis for using the 1.6 grade factor). In other circumstances, the board of revision or auditor may be called upon to present evidence as a rebuttal as to some particular factual matter. See id. at ¶ 20 (county could have presented evidence negating the probative value of aspects of the owner's actual-cost study but did not); *Cummins Property Servs., L.L.C. v. Franklin Cty. Bd. of Revision*, 117 Ohio St.3d 516, 2008-Ohio-1473, 885 N.E.2d 222, ¶ 45 (county could have developed and presented evidence of an improvement after an arm's-length sale but before the tax lien date but did not).

**{¶ 31}** But unlike a school board or a property owner that seeks to depart from the county's valuation of the property, the board of revision and the auditor do not themselves acquire the burden of proving the general accuracy of the appraisals on which they initially relied. Compare *Mentor Exempted Village Bd. of Edn. v. Lake Cty. Bd. of Revision* (1988), 37 Ohio St.3d 318, 319, 526 N.E.2d 64 (once school board presented *probative* evidence of value, owner had the burden to present contrary evidence of value), with *Simmons*, 81 Ohio St.3d 47, 48, 689 N.E.2d 22 (once BTA found that owner who had appealed did not affirmatively show value, BTA properly affirmed the county's valuation even though the county had presented no evidence). This distinction arises because of the settled principle that "when a county auditor acts 'within the limits of the

jurisdiction conferred by law,' the auditor's action is 'presumed, in the absence of proof to the contrary, to be valid and to have been done in good faith and in the exercise of sound judgment.' " *Dayton–Montgomery*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 13, quoting *Wheeling Steel Corp. v. Evatt* (1944), 143 Ohio St. 71, 28 O.O. 21, 54 N.E.2d 132, paragraph seven of the syllabus. The county's appraised value thus forms in most cases a default valuation that must be preferred and adopted if the appellant before the BTA fails to prove a different value of the property, and our review of the record in the 2004 tax-year cases persuades us that this principle applies in these cases.

### Conclusion

**{¶ 32}** For the reasons set forth, we affirm the decision of the BTA in No. 2008-0443.  In Nos. 2008-0559, 2008-0560, and 2008-0561, we vacate the BTA's decisions and remand for further proceedings consistent with this opinion.

Judgment accordingly.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

O'DONNELL, J., concurs in judgment only.

PFEIFER and LANZINGER, JJ., concur in part and dissent in part.

_____

**PFEIFER, J., concurring in part and dissenting in part.**

**{¶ 33}** In *Colonial Village Ltd. v. Washington Cty. Bd. of Revision*, 114 Ohio St.3d 493, 2007-Ohio-4641, 873 N.E.2d 298 ("*Colonial Village* I"), at ¶ 23, we stated, "The BTA must ' "independently weigh and evaluate all evidence properly before it" ' in order to ' "make an independent determination concerning the valuation of the property at issue," ' " quoting *Columbus Bd. of Edn. v. Franklin Cty. Bd. of Revision* (1996), 76 Ohio St.3d 13, 16, 665 N.E.2d 1098, quoting *Black v. Cuyahoga Cty. Bd. of Revision* (1985), 16 Ohio St.3d 11, 13, 16 OBR 363, 475 N.E.2d 1264.  In this case, the Board of Tax Appeals reviewed all

the evidence before it, including testimony of the qualified appraisers used by both parties. Based on that review, the BTA concluded that neither the appraisal offered by Colonial Village nor the appraisal offered by the BOR accurately reflected the value of the various parcels for the various tax years. Accordingly, the BTA made specific reasonable adjustments to the appraisals, including adjusting expense ratios, vacancy rates, and credit-loss rates to reflect market averages, and arrived at its own valuation. As in *Colonial Village* I, "[t]he record contains ample information for the BTA to 'determine the taxable value of the property,' " and I would defer to the conclusions reached by the BTA. Id. at ¶ 24, quoting R.C. 5717.03.

{¶ 34} Furthermore, the majority opinion states that the county's valuation is presumptively valid. I would not go that far. In many instances, including here, the county auditor does nothing more than make a percentage adjustment to the property record card. In many instances, including here, that property record card has a valuation that was not the result of an appraisal by a qualified appraiser. When the county auditor has not conducted a reasonable appraisal, its valuation should not be entitled to deference.

{¶ 35} Because the BTA properly applied the relevant case law, including *Colonial Village* I, it did not commit error in independently valuing the properties, and I would affirm the decisions of the BTA in all four cases before us.

LANZINGER, J., concurs in the foregoing opinion.

_____

Karen H. Bauernschmidt Co., L.P.A., and Karen H. Bauernschmidt, for appellants and cross-appellees.

James R. Gorry, for appellees and cross-appellants.

_____