GASTON, APPELLANT, *v.* MEDINA COUNTY BOARD

OF REVISION ET AL., APPELLEES.

[Cite as *Gaston v. Medina Cty. Bd. of Revision,*

133 Ohio St.3d 18, 2012-Ohio-3872.]

*Taxation—Real property—Burden of proof on valuation—Board of Tax Appeals*
*decision to uphold the county's valuation was reasonable and lawful—*
*Decision affirmed.*

(No. 2011-1284—Submitted August 22, 2012—Decided August 28, 2012.)

APPEAL from the Board of Tax Appeals, No. 2008-M-1961.

_____

**Per Curiam.**

{¶ 1} In this real-property-valuation case, the owner seeks to reverse, in whole or in part, the 20 percent increase in the value of his residential property that the auditor ordered for tax year 2007 as part of the sexennial reappraisal in that county. At the hearing before appellee Medina County Board of Revision ("BOR"), the auditor, also an appellee, presented a comparable-sale study. That study demonstrated that after the 2007 reappraisal, the value of appellant Hajj Gaston's home was at the approximate average per square foot of recent sale prices included in the study. Gaston did not attend the BOR hearing, and he contends that he was not properly served with notice of it.

{¶ 2} Gaston appealed to the Board of Tax Appeals ("BTA"). Gaston presented his testimony and exhibits to the BTA, and the county presented testimony of one of its appraisers. The BTA excluded Gaston's testimony and two of his exhibits under R.C. 5715.19(G) and accorded no weight to the county's witness or its comparable-sale study. *Gaston v. Medina Cty. Bd. of Revision,* BTA No. 2008-M-1961, 2011 WL 2601741, *2 (June 28, 2011). It then held that

Gaston had not sustained his burden to show a value different from that found by the BOR. *Id.*, *3.

**{¶ 3}** Gaston has appealed and argues that he was not properly notified of the BOR hearing, that all the evidence that he presented at the BTA hearing should have been considered by the BTA, and that he is entitled to a reduced valuation for tax year 2007. Because Gaston has not shown that the BTA's decision is unreasonable or unlawful, we affirm.

### Facts

**{¶ 4}** In Medina County, tax year 2007 was a sexennial reappraisal year, and the county auditor increased the valuation of Gaston's property from a true value of $307,600 to $369,780—a 20 percent increase over the prior year's valuation. (It is worth noting that the $307,600 valuation at which the property was carried for 2005 and 2006 is almost seven percent below the April 2003 sale price of $329,915.) On March 26, 2008, Gaston filed his complaint against valuation, seeking a true-value reduction from $369,780 to $329,000 (approximately the 2003 sale price of the property). As grounds for the decrease, Gaston stated that there had been "[n]o changes or permits on the parcel," and that there had been "no upgrades to the property[:] No pool, No deck, No landscaping, No finished basement, No additions."

**{¶ 5}** On August 13, 2008, the BOR sent to Gaston's address by certified mail a notice that a hearing would be held on September 4, 2008. Gaston did not appear at that hearing and argues that he was unaware of the mailed notice. The return receipt shows no date of delivery, but does show the name of the person who signed for the delivery of the notice. At the BTA hearing, Gaston acknowledged that the person shares his address. Gaston also testified, "I don't remember receiving any information like that" concerning the BOR's notification of the hearing, and he stated, "I was not aware of a hearing," as his response to the question, "You did not attend the [BOR] hearing, correct?"

2

**{¶ 6}** At the BOR hearing, the auditor presented property-record cards and photographs concerning properties apparently regarded as generally comparable to Gaston's. A summary analysis computed the value per finished square foot, showing that after the sexennial reappraisal, Gaston's property at $93.66 per square foot was in the middle range of the properties. The BOR retained the auditor's valuation.

**{¶ 7}** Gaston did receive the notice of the BOR's decision, which made no change in the value of the property. Gaston appealed to the BTA and presented his testimony and certain exhibits at the BTA hearing. The county presented testimony of an appraisal supervisor who identified the comparable-sale study, confirmed the value-per-square-foot computation, and opined that a true value of $369,780 was a "reasonable fair market value" for Gaston's property. On cross-examination, the county's witness admitted that she did not prepare the list of comparables and did not personally inspect them.

**{¶ 8}** In its decision, the BTA decided to accord no weight to the auditor's comparable-sale study. *Gaston v. Medina Cty. Bd. of Revision*, BTA No. 2008-M-1961, 2011 WL 2601741, *3. The BTA also found that pursuant to R.C. 5715.19(G), Gaston's testimony and exhibits 1 and 7 should be excluded because of Gaston's failure to attend the hearing to present evidence, in spite of his having been served with notice of it. *Id.*, *2. The BTA held that Gaston had failed to prove a different value from that determined by the county; accordingly, it adopted the BOR's valuation. *Id.*, *3.

### Analysis

**{¶ 9}** The BTA is responsible for determining factual issues, but we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001). In the present case,

Gaston argues that the BTA erred by excluding his evidence pursuant to R.C. 5715.19(G) and by adopting the BOR's valuation of the property.

{¶ 10} R.C. 5715.19(G) requires the party that files a valuation complaint to "provide to the board of revision all information or evidence within the complainant's knowledge or possession" concerning the value of the property, and failure to do so results in the complainant's being "precluded from introducing it on appeal to the board of tax appeals or the court of common pleas, except that the board of tax appeals or court may admit and consider the evidence if the complainant shows good cause for the complainant's failure to provide the information or evidence to the board of revision."  In this case, the BTA reasoned that Gaston's failure to appear at the BOR hearing triggered R.C. 5715.19(G) with respect to any evidence that Gaston presented at the BTA that had not been before the BOR.

{¶ 11} Gaston argues that R.C. 5715.19(G)'s prohibition should not be applied to him because he did not actually receive notice of the hearing and because there are defects in the record of the service of the notice of the hearing. Before turning to the applicability of R.C. 5715.19(G)'s prohibition, we note that Gaston's contentions raise a threshold jurisdictional issue that we will address at the outset.

## A. Gaston failed to show improper service of the
## BOR hearing notification

{¶ 12} We have held that a board of revision's failure to give a property owner notice of a pending complaint and a hearing as required by R.C. 5715.19(C) and 5715.12 deprives the BOR of jurisdiction to issue an order increasing the value of the property. *Knickerbocker Properties, Inc. XLII v. Delaware Cty. Bd. of Revision*, 119 Ohio St.3d 233, 2008-Ohio-3192, 893 N.E.2d 457, ¶ 20, quoting *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 87 Ohio St.3d 363, 366-367, 721 N.E.2d 40 (2000).  Similarly, a lack of

4

required notification here could have deprived the BOR of jurisdiction to conduct the hearing and decide Gaston's complaint. Although he does not explicitly raise the jurisdictional issue, Gaston's argument clearly implicates the holding of *Knickerbocker*. We therefore consider whether the BOR had jurisdiction to issue its decision in light of Gaston's assertion that he did not actually receive notice of the BOR hearing. [1]

{¶ 13} In tax cases, we have adopted the standard that "service by registered or certified mail 'is effective when the notice is delivered and properly receipted for by an appropriate person' at the assessee's address." *Skuratowicz v. Tracy*, 76 Ohio St.3d 103, 104, 666 N.E.2d 1096 (1996), quoting *Castellano v. Kosydar*, 42 Ohio St.2d 107, 326 N.E.2d 686 (1975), syllabus. Under *Castellano*, when the record shows timely certified mailing of the administrative order and also shows receipt by a proper person at the taxpayer's address, the service is presumed valid—with the result that the taxpayer must shoulder the burden to rebut by presenting "sufficient evidence demonstrating non-service." *New Co-Operative Co. v. Liquor Control Comm.*, 10th Dist. No. 01AP-1124, 2002-Ohio-2244, ¶ 9 (applying the same standard to service of liquor-control commission order); *Tripodi v. Liquor Control Comm.*, 21 Ohio App.2d 110, 112, 255 N.E.2d 294 (1970); *Oak Grove Manor, Inc. v. Ohio Dept. of Human Servs.*, 10th Dist. Nos. 01AP-71 and 01AP-72, 2001 WL 1269372, *4 (Oct. 23, 2001) (same analysis regarding service of Medicaid reimbursement-rate order); accord *Holmes v. Union Gospel Press*, 64 Ohio St.2d 187, 189, 414 N.E.2d 415 (1980) (administrative decision was validly served when mailed per statute to the party's last known address); *Townsend v. Dollison*, 66 Ohio St.2d 225, 228, 421 N.E.2d 146 (1981) (same with administrative license suspension).

---

1. We have held that our disposition of such jurisdictional issues in BTA appeals is not constrained by the arguments advanced by the parties or the errors specified in the notice of

*1. Gaston failed to show a procedural flaw*
*in the service of the hearing notice*

{¶ 14} One way to defeat the presumption that certified-mail service is valid lies in demonstrating a procedural flaw in the service: use of the wrong address, receipt by someone who is not a proper person, or untimely mailing or receipt. Gaston does allege formal deficiencies in the service, but he furnishes no evidence to support his contentions. Namely, Gaston points to the absence of evidence of actual delivery to his address, the absence of evidence of the date of mailing, and the absence of the date of receipt.

{¶ 15} As for evidence of delivery, Gaston's argument founders on his own testimony: when asked whether the person who signed for the mailing lives with him, Gaston assented. Nor is there, on this record, any basis for questioning that the person who took receipt and who signed for the mail was a proper person to do so: Gaston had every opportunity to establish improper delivery but failed to. *See New Co-Operative Co.*, 2002-Ohio-2244, ¶ 11.

{¶ 16} As for the *date* of both the mailing and the delivery of the notice, Gaston asserts that the handwritten mailing date is unreliable and points to the fact that the mail receipt bears no date of delivery. But two presumptions, unrebutted on this record, defeat these assertions. First, the stated date of mailing matches the date of the hearing letter, and Gaston's suggestion that backdating might have occurred is foreclosed by the presumption of regularity that attaches to official actions. *See Toledo v. Levin*, 117 Ohio St.3d 373, 2008-Ohio-1119, 884 N.E.2d 31, ¶ 28 ("We presume that a public official means what he says and that he is duly performing the function that the law calls upon him to perform"), citing *State ex rel. Shafer v. Ohio Turnpike Comm.*, 159 Ohio St. 581, 590, 113 N.E.2d 14 (1953). The record contains no evidence that the handwritten date "8/13/08"

___

appeal. *See Elyria v. Lorain Cty. Budget Comm.*, 117 Ohio St.3d 403, 2008-Ohio-940, 884 N.E.2d 553, ¶ 13.

on the mailing is anything other than the date on which it was put into the mail (just as the date "9/22/08" appears to serve the same function on another mail receipt in the record).

{¶ 17} Second, the notice arrived timely. We note that R.C. 5715.19(C) requires that the owner be notified "not less than ten days prior to the hearing, of the time and place [the complaint] will be heard." Yet the mail receipt does not indicate whether the notice was received on or before Monday, August 25, 2008, which was ten days before the scheduled hearing date—a default attributable neither to the auditor nor to the BOR, but rather to the postal service and/or the recipient. The "presumption of timely delivery" fills in the gap: when *both* the date of mailing *and* the fact of receipt have been established, courts take "judicial notice of the ordinary course of the mails" and infer that, in the ordinary course of the mail, the mailed document arrived on time. *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 205, 389 N.E.2d 1113 (1979). Here, the inference arises that a notice mailed on Wednesday, August 13, 2008, would have arrived at Gaston's residence on or before the ten-day statutory deadline, which fell on Monday, August 25, 2008.

{¶ 18} It follows that the BOR's certified-mail service of the hearing notice satisfied the statutory standard and constituted prima facie evidence of proper service. Under these circumstances, Gaston acquired the full burden of rebuttal. [2]

### 2. Gaston failed to rebut the presumption of valid service

{¶ 19} The case law establishes that Gaston's burden is a heavy one, for obvious reasons. Just as a person who has been personally served with a

---

2. In *Holmes*, 64 Ohio St.2d at 189, 414 N.E.2d 415, the dissent objected that the majority "in effect created an irrebuttable presumption" of valid service. The majority opinion does not, however, address the rebuttability issue, which was not advanced in the appellant's sole proposition of law. In this case, we hold that the presumption of valid service is rebuttable. *See*

summons or a subpoena cannot disclaim knowledge of its content by failing to read what has been physically delivered to him or her, a person subjected to certified-mail service cannot dodge service through negligence in attending to the mail.

{¶ 20} The facts of *Castellano* illustrate the point well. In that case, sales-tax assessments were issued against two brothers and were transmitted pursuant to statute by certified mail to their respective Ohio residences. 42 Ohio St.2d 107, 326 N.E.2d 686. At each residence, the assessment arrived on April 6 while the assessee was away from home for an extended period, and the mailing in each case was actually received and signed for by a close relative (father and spouse). *Id*. One of the assessees testified that he never received the mailing and that he did not remember whether he inquired whether he had received any mail during his absence from his home. *Castellano v. Kosydar*, BTA No. 251, at 5 (Mar. 25, 1974), *affirmed*, 42 Ohio St.2d 107, 326 N.E.2d 686. The other testified that he first received the assessment when he arrived home. *Id*. Both assessees filed petitions for reassessment more than 30 days after service of the assessments. As a result, both the BTA and this court upheld the dismissal of the petitions as untimely.

{¶ 21} Similarly, in this case, a person who lives at Gaston's residence took receipt of the certified mailing, and Gaston testified that he personally did not "remember receiving any information like" the hearing notice and that he was "not aware of a hearing." The case law shows that Gaston has not rebutted the presumption of valid service. Stating his lack of actual prior knowledge of the hearing fails to prove that Gaston was somehow prevented from knowing what he would have known had he exercised proper diligence in attending to the mail that

---

*Tripodi*, 21 Ohio App.2d at 112, 255 N.E.2d 294; *Oak Grove Manor, Inc.*, 10th Dist. No. 01AP-71, 2001 WL 1269372, *4.

was received at his very own residence.[3] *Accord New Co-Operative Co.*, 2002-Ohio-2244, ¶ 10-11.

### B. Gaston has not shown that the BTA abused its discretion
### in excluding evidence at the hearing

{¶ 22} As discussed, the BTA invoked R.C. 5715.19(G) and, relying on the authority of that statute, explicitly excluded from consideration Gaston's testimony and his exhibits 1 and 7. *Gaston*, BTA No. 2008-M-1961, 2011 WL 2601741, *2. Gaston argues that his testimony and exhibits should have been considered because he was not properly notified of the BOR hearing.

{¶ 23} As an exception to the general exclusionary rule, R.C. 5715.19(G) does expressly permit the BTA to "admit and consider the evidence if the complainant shows good cause for the complainant's failure to provide the information or evidence to the board of revision." The BTA declined to do so, and Gaston asks us to reverse.

{¶ 24} Our standard for reviewing this aspect of the BTA's decision is abuse of discretion. That is so because R.C. 5715.19(G) states that the BTA "*may* admit and consider" such evidence where good cause is found. (Emphasis added.) *See J.M. Smucker, L.L.C. v. Levin*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866 ¶ 12, 14-15 (because the statute provided that the tax commissioner "may" abate a penalty when the taxpayer's failure to timely file a return or list property "appears * * * [to be] due to reasonable cause and not willful neglect," it conferred a discretionary authority).

{¶ 25} We find no abuse of discretion in the BTA's declining to consider the additional evidence. After reviewing the circumstances of the service of the hearing notice, the BTA found that "Mr. Gaston received notice of the hearing before the BOR, but failed to appear," with the result that the BTA could "find no

---

3. Indeed, Gaston's testimony if believed does not rule out that he might actually have been told about the mailing or seen it, but neglected to open and read it.

good cause demonstrated in this matter." *Gaston*, BTA No. 2008-M-1961, 2011 WL 2601741, *2. That holding does not demonstrate an unreasonable, arbitrary, or unconscionable attitude that would justify a reversal by this court. *J.M. Smucker, L.L.C.*, 113 Ohio St.3d 337, 2007-Ohio-2073, 865 N.E.2d 866, ¶ 16, 19-20.

**C. Gaston did not prove a value different from that determined by the county**

*1. Gaston has not offered affirmative evidence for*
*any of the claimed valuations of his property*

{¶ 26} Because the true value of property is a "question of fact, the determination of which is primarily within the province of the taxing authorities," we have held that we will "not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. We conclude that Gaston has not shown that the BTA's decision was either unreasonable or unlawful.

{¶ 27} The general rule before the BTA is that "the party challenging the board of revision's decision at the BTA has the burden of proof to establish its proposed value as the value of the property." *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 23. Gaston has argued for a number of different values, but has not offered affirmative proof of any of them.

{¶ 28} First, Gaston has emphasized that his challenge primarily concerns the increase of his valuation as part of Medina County's sexennial reappraisal in tax year 2007. By implication, this challenge seeks to reduce the value back to its 2006 level, which was $307,600. Second, Gaston has referred to the 2003 sale price of $329,915 as demonstrating a flaw in the county's analysis, although he has stopped short of arguing that it furnishes an arm's-length criterion of value as

of January 1, 2007. Third, Gaston's original complaint called for a value of $329,000, while his notice of appeal to the BTA sought a valuation of $265,000. But again, Gaston has offered no proof of any of these proposed values.

{¶ 29} Instead, Gaston has focused exclusively on finding flaws in the county's analysis. In doing so, Gaston is perhaps attempting to avail himself of the principle that, by pointing to evidence that negates the county's valuation, he may "trigger" the BTA's duty to determine whether there is sufficient evidence to perform an independent valuation of the property. *See Colonial Village*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 23–26. We conclude, however, that Gaston has not triggered the BTA's duty and that the record does not contain support for an independent valuation of the property.

*2. The 2007 tax-year increase has not been shown to be unreasonable*

{¶ 30} Perhaps the most persuasive justification for Gaston's appeal is the sheer amount of the increase ordered for tax year 2007: 20 percent. This seems unusually large, and indeed it exceeds the percentage increases ordered for the other properties in the comparable-sale study. The county offers no specific explanation for why Gaston's increase should be so much greater than that ordered for other properties.

{¶ 31} Under these circumstances, however, we hold that the sheer size of the increase does not impugn its validity. Nothing in the record compels the conclusion that the percentage increase was unjustified, nor can we rule out that the 2007 adjustment may in part correct an undervaluation during earlier tax years. Indeed, the 2006 valuation of $307,600 was seven percent below the 2003 sale price of $329,915: had the sale price been the criterion of value for 2006, the increase for 2007 would have been 12 percent, which is in line with the increases ordered for other properties in the comparable-sale study offered by the county.

{¶ 32} Additionally, the legal requirement that Medina County perform a reappraisal for tax year 2007, when viewed in conjunction with the comparable-

sale study, supports the value found by the BOR and affirmed by the BTA. Each county auditor has the duty to "reappraise property values once every six years and update the values at the interim three-year point." *AERC Saw Mill Village, Inc. v. Franklin Cty. Bd. of Revision*, 127 Ohio St.3d 44, 2010-Ohio-4468, 936 N.E.2d 472, ¶ 19, citing R.C. 5713.01(B), 5713.03, 5715.33, and 5715.24. In making his finding of an increase or decrease in the value of property, the auditor must take into account factors enumerated in the administrative rules. Ohio Adm.Code 5703-25-06.

**{¶ 33}** Because the auditor is "presumed to have properly performed [his] duties and not to have acted illegally but regularly and in a lawful manner," *State ex rel. Shafer*, 159 Ohio St. at 590, 113 N.E.2d 14, we will presume that the required reappraisal took place in Medina County with the result that the value assigned to Gaston's property for tax year 2007 was lawfully increased.

**{¶ 34}** The auditor's comparable-sale study included property-record cards for six properties of similar subdivision, neighborhood, or class that had been sold during the previous three-year period—i.e., the sales occurred during 2004, 2005, and 2006. The table demonstrates that the value of Gaston's property as redetermined for tax year 2007 is "about average" with respect to the sale prices of the comparables within the three-year period, as the county's witness stated. While the BTA decided to give no weight to the study, the study nonetheless does generally support the inference that the auditor's work accorded with the procedure prescribed by the statutes and the administrative rules.

*3. Gaston's specific objections to the comparable-sale study
do not establish his entitlement to a reduced valuation*

**{¶ 35}** The BTA decided to accord no weight to the comparable-sale study. *Gaston*, BTA No. 2008-M-1961, 2011 WL 2601741, *3. We need not address the propriety of this determination because Gaston's objections fail to

12

establish that errors in the study would indicate a reduced value for his property even if the study had been accorded greater significance.

{¶ 36} First, Gaston disputes the auditor's decision not to include the sale price of his own home—it was purchased in 2003 for $329,915, which amount had then been entered as the value of his property until the 2007 reappraisal. But the April 24, 2003 sale occurred more than three years and eight months before the lien date of the reappraisal year and was therefore less likely to be indicative of value on the lien date than sales within the preceding two years. As a result, it was not unreasonable or unlawful for the 2003 sale to be excluded from the comparable-sale study.[4]

{¶ 37} Second, Gaston faults the use of the 2005 sale price for the property at 95 Vista Ridge Circle, noting that it might not have been at arm's-length because the purchaser was a relocation company, and Gaston questions why the higher 2005 sale price was used rather than the lower 2006 sale price.[5] But this point does not establish Gaston's entitlement to a value reduction because, quite simply, the price-per-square-foot figure derived from the 2005 sale is lower than the value-per-square-foot figure assigned to Gaston's property for 2007—in other words, within the four corners of the comparable-sale study, the use of the 95 Vista Ridge Circle sale price tends to keep Gaston's own valuation *lower*. Conversely, eliminating it would indicate a higher valuation for Gaston's property than that set by the county.

4. If Gaston, instead of arguing that the 2003 sale price of his property should be considered as a comparable, were contending that the 2003 sale constitutes a recent arm's-length sale that determines the property's value, the auditor's comparable-sale study would probably have become relevant as a rebuttal to the recency of the sale by showing a change in market conditions.

5. At the BTA hearing, Gaston pressed the county's witness to explain the use of that comparable. Because she had not conducted the study, the witness was unable to explain (1) why the 2005 sale price was used instead of the 2006 one (which was closer to the lien date) and (2) how the sales would qualify as arm's-length transactions, given that they consist of one sale to and one sale by a relocation company. Ultimately, the witness stated that, had she performed the study, she would not have used the 95 Vista Ridge sales as a comparable.

**{¶ 38}** Nor is there any legally compelling reason why the 2006 sale price should be preferred to the 2005 sale price—although closer to the lien date, the 2006 sale price is equally suspect in terms of its arm's-length character because the seller was the relocation company. Moreover, using the 95 Vista Ridge Circle sale price from 2005 generates a per-square-foot figure that is vastly lower than the others in the study. Arguably, it should be disregarded as an outlier.

**{¶ 39}** Finally, Gaston's objection that adjustments ought to be made because the comparables are different from his property in significant ways is beside the point. What the comparable-sale study purports to show is not a full-blown appraisal valuation of Gaston's property, but merely certain trends that justified an increased valuation for 2007.

**{¶ 40}** Under all these circumstances, we conclude that Gaston has failed to show that the BTA's adoption of the BOR's valuation is unreasonable or unlawful.

### D. Gaston's "motion for protective order" is denied

**{¶ 41}** After the oral argument in this case, Gaston filed a "motion for protective order." The motion asks that "all material referencing the Appellant, Hajj Gaston, be removed from the Supreme Court's and the Board of Tax Appeals' websites." Gaston predicates his motion on identity-theft concerns and states that he believes the public should have access to this case, but not *Internet* access.

**{¶ 42}** We must deny Gaston's motion because Gaston has neither cited any legal authority nor demonstrated any compelling reason for the court to depart from the ordinary practice of posting and maintaining information on its website—a practice that advances the public interest by facilitating public access to court documents. In particular, Gaston points to no "personal identifiers" such as Social Security numbers and bank-account numbers, whose confidentiality must necessarily be maintained to secure against identify theft. Similarly, Gaston

cites no statutory authority that would permit us to order the BTA to remove material from its website in the context of an appeal.

### Conclusion

{¶ 43} Because the BTA reasonably and lawfully upheld the county's valuation of Gaston's property, we affirm the board's decision.

Decision affirmed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER and LANZINGER, JJ., concur in judgment only.

_____

Hajj Gaston, pro se.

Dean Holman, Medina County Prosecuting Attorney, and David Folk, Assistant Prosecuting Attorney, for appellees.

_____