SHINKLE, APPELLANT, *v.* ASHTABULA COUNTY

BOARD OF REVISION ET AL., APPELLEES.

[Cite as *Shinkle v. Ashtabula Cty. Bd. of Revision,* 135 Ohio St.3d 227,

2013-Ohio-397.]

*Taxation—Real property—Valuation—Taxpayer has burden of proving value is*
*different from value assigned by county—R.C. 5715.19(D)—Requirement*
*that taxpayer state in complaint amount of overvaluation or*
*undervaluation "runs to the core of procedural efficiency" and is*
*therefore jurisdictional—Dismissal of complaint for failure to state*
*amount at issue was proper.*

(No. 2012-0670—Submitted February 6, 2013—Decided February 13, 2013.)

APPEAL from the Board of Tax Appeals,

Nos. 2008-K-1756 through 2008-K-1761.

_____

**Per Curiam.**

{¶ 1}  This case concerns the 2007 tax-year valuation of six properties
owned by the appellant, Wesley A. Shinkle.  On the merits, the Ashtabula County
Board of Revision ("BOR") retained the auditor's valuation for five parcels but
ordered a reduction for one.  Shinkle appealed all six of the BOR decisions to the
Board of Tax Appeals ("BTA"), which issued its decision on March 20, 2012.  In
the case of one of the six parcels, the BTA decided that the complaint's failure to
state an actual dollar amount of value reduction was a jurisdictional defect, and it
remanded that cause to the BOR for dismissal.  With respect to the other five
parcels, the BTA found that the evidence offered by Shinkle was insufficient to
find a value different from that determined by the BOR.

**{¶ 2}** On appeal, Shinkle argues that the BTA erred with respect to both the jurisdictional and the valuation issues. We disagree, and we therefore affirm.

**Facts**

*Background*

**{¶ 3}** Shinkle was the common owner of several parcels in the village of Rock Creek in Ashtabula County for which he filed six valuation complaints on March 31, 2008. The Jefferson Area Local School District Board of Education (the "school board"), appellee, filed a countercomplaint seeking to retain the auditor's valuation on one of those properties. After holding a hearing on August 14, 2008, the BOR issued its decision in each case on August 26, 2008. Shinkle appealed all six decisions to the BTA, which consolidated them for hearing and decision. On September 30, 2011, the BTA held a hearing at which Shinkle and his witnesses testified.

*Shinkle's Testimony*

**{¶ 4}** 1. **3244 Lawton Avenue**. Shinkle testified that this parcel was an investment property, that about two-thirds of the lot was wetland, and that due to land taken and raised for a road alteration, a "dike effect * * * floods the property and has lowered the property value since I bought it." He testified that the house on the lot was in poor condition and that it had a shingle roof, 20-year-old siding, bad landscaping, and an incomplete electric and plumbing installation. A barn on the property was also in poor condition. Shinkle stated that although he had originally paid $15,000 for the property in 1988, it was currently worth $8,500. The auditor valued the property at $89,400.

**{¶ 5}** 2. **3250 Main St**. This is a residential property. Shinkle described his residence as a house built in the late 1800s with an unfinished interior and collapsing stone foundation and concrete-block walls. An unremediated gasoline spill affected this parcel. Shinkle had originally paid $35,000, and the auditor assigned the property a value of $32,000, allocating $25,100 to the land and

$6,900 to the building. Shinkle believed the property to have a "negative value or a near negative value."

{¶ 6} 3. **3252 Main St**. For this "impound, storage, [and] trucking" parcel, Shinkle stated that in addition to the gasoline spill, the property lacked a sewer hookup. The auditor valued the property at $63,700 and Shinkle expressed no opinion of its value either in his valuation complaint or at the BTA hearing.

{¶ 7} 4. **High St. Lot**. This 0.62-acre vacant lot adjacent to Shinkle's residence was valued by the auditor at $11,700. Shinkle testified that it was topographically unsuited for construction and valued it at $1,200, in light of the gasoline spill flowing downhill onto the lot.

{¶ 8} 5 and 6. **3259 Main St. and 3271 Main St**. These parcels included a gas station at 3259 Main valued by the auditor at $57,800 and the adjacent 0.02-acre vacant lot valued at $5,100. Shinkle testified that the value of both properties was $15,000 based on the poor condition of the building, a problem involving the sewer, and a disputed easement. He also claimed that the gas station was a spill site that drastically reduces the property's marketability.

{¶ 9} Shinkle also testified regarding the unremediated gasoline spill. In 1989, Rock Creek village performed a survey that identified underground storage tanks on two of the parcels at issue: the "impound, storage, [and] trucking" property at 3252 Main Street and Shinkle's residence at 3250 Main Street. The village removed four of the five storage tanks as part of excavating and installing the sewer. When the tanks were removed, a gasoline spill occurred that involved at least a thousand gallons. Before the fuel spill, Shinkle had paid $35,000 for the residence.

{¶ 10} The spill was never properly remediated, and Shinkle maintains that the ongoing contamination reduces the value of his properties below what the county determined. He referred to testimony of a BTA witness who testified that the Ohio Bureau of Underground Storage Tank Regulations ("BUSTR")

maintained an "open site number" on the two properties as of the date of hearing on September 30, 2011. This designation means that there was an unremediated spill on the site. According to the witness, such a designation affords BUSTR the authority to demand closure of the site and remediation, which makes the properties nearly impossible to sell or lease. Shinkle testified that his attempts to get the "open site" designation removed have been fruitless.

*Exclusion of Expert Opinion*

{¶ 11} In addition to offering his own testimony and opinions before both the BOR and the BTA, Shinkle offered the testimony of Patrick H. Laughlin. Laughlin was offered as an expert in "contamination remediation," but his testimony was received as fact testimony rather than expert opinion testimony. Laughlin testified about the unremediated gasoline spill, its administrative consequences, and its negative effect on the value of the properties.

{¶ 12} Shinkle also proffered written appraisal reports and the testimony of Ronald Damon, who after questioning by the hearing examiner was deemed to be a fact witness rather than an expert.

{¶ 13} The examiner also struck the written opinions of value that Shinkle proffered as exhibits.

*The BTA's Decision*

{¶ 14} Shinkle filed his valuation complaints on March 31, 2008. On March 20, 2012, the BTA issued a single decision covering all six properties. The BTA found that the failure to specify an amount of value in dispute constituted a fatal jurisdictional defect as to Shinkle's complaint on the impound, storage, and trucking lot. Regarding Damon's testimony, the BTA stated that "although initially found to be competent to offer expert appraisal testimony, [Damon] was later determined to lack the necessary qualifications to offer an opinion, and, even if so qualified, [Damon] failed to adequately support the opinion expressed."

*Shinkle v. Ashtabula Cty. Bd. of Revision*, BTA Nos. 2008-K-1756 through 2008-K-1761, 2012 WL 992339, *4 (Mar. 20, 2012).

{¶ 15} With respect to the BOR record and the evidence admitted at the BTA hearing, the BTA determined that Shinkle had provided proof of certain defects, but had failed to offer sufficient evidence of value different from that found by the county. Because Shinkle "failed to meet his affirmative burden assigned on appeal," the BTA concluded that "there exists an insufficient basis upon which to alter the auditor's and BOR's determinations" with respect to the five remaining parcels at issue. Accordingly, the board ordered dismissal of the case as to the impound and trucking lot and adopted the values determined by the BOR as to the other parcels.

**Analysis**

*1. The requirement that the complaint state the amount of value at issue*
*runs to the core of procedural efficiency and is jurisdictional*

{¶ 16} A property owner dissatisfied with the value assigned to his property by the county auditor may contest that valuation by filing a complaint pursuant to R.C. 5715.19(A)(1). When the complaint claims at least $17,500 of overvaluation or undervaluation, R.C. 5715.19(B) requires the county auditor to give notice of the filing of the complaint to certain entities. That notification triggers the period within which the notified entity (in this case the school board) may file a countercomplaint and become a party to the proceedings. Finally, R.C. 5715.19(D) explicitly sets forth the mandate that makes the required notification possible: "Each complaint shall state the amount of overvaluation, undervaluation, discriminatory valuation, illegal valuation, or incorrect classification or determination upon which the complaint is based."

{¶ 17} We have held that "[a]n appeal, the right to which is conferred by statute, can be perfected only in the mode prescribed by statute," and the "exercise of the right conferred is conditioned upon compliance with the

accompanying mandatory requirements." *Zier v. Bur. of Unemp. Comp.*, 151 Ohio St. 123, 84 N.E.2d 746 (1949), paragraph one of the syllabus; *Worthington City Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 124 Ohio St.3d 27, 2009-Ohio-5932, 918 N.E.2d 972, ¶ 17 ("we have consistently treated full compliance with R.C. 5715.19 as an indispensible prerequisite for the exercise of jurisdiction by a board of revision"); *compare Knickerbocker Properties, Inc. XLII v. Delaware Cty. Bd. of Revision*, 119 Ohio St.3d 233, 2008-Ohio-3192, 893 N.E.2d 457, ¶ 10 (incorrect taxpayer address on valuation complaint filed by board of education not a jurisdictional defect because the statute does not require that complaint state address). The reference to "mandatory requirements" in the *Zier* syllabus points to the importance of distinguishing mandatory from directory requirements. *See 2200 Carnegie, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 135 Ohio St.3d 284, 2012-Ohio-5691, 986 N.E.2d 919, ¶ 26. To draw that distinction, the case law asks whether the requirement at issue " 'runs to the core of procedural efficiency.' " *Id*. at ¶ 24, quoting *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision*, 80 Ohio St.3d 621, 623, 687 N.E.2d 746 (1998); *see also Akron Std. Div. of Eagle-Picher Industries, Inc. v. Lindley*, 11 Ohio St.3d 10, 12, 462 N.E.2d 419 (1984). If it does, the requirement is mandatory, and compliance is a jurisdictional prerequisite to pursuing the administrative case.

{¶ 18} The requirement to state the amount of value on which the complaint is based plainly runs to the core of procedural efficiency under R.C. 5715.19. R.C. 5715.19(D) specifically requires that the amount of overvaluation or undervaluation be stated, and compliance with that mandate permits the auditor to determine whether to send out a notice under R.C. 5715.19(B). That notice in turn affords interested persons the right to become a party by filing a countercomplaint.

**{¶ 19}** More generally, the case law has usually treated a statutory requirement as mandatory and hence jurisdictional when the requirement is (1) imposed on the appellant itself and (2) relates to the informative content of the document by which the administrative proceeding is instigated. *See Zier* at 126-127 (requirement that notice of appeal from denial of unemployment compensation "set forth the decision appealed from" held to be jurisdictional), citing and relying on *Am. Restaurant & Lunch Co. v. Glander*, 147 Ohio St. 147, 70 N.E.2d 93 (1946) (both the requirement that the tax commissioner's determination be attached to the notice of appeal to the BTA and the requirement that the notice specify the errors complained of are jurisdictional prerequisites); *compare Stanjim Co. v. Mahoning Cty. Bd. of Revision*, 38 Ohio St.2d 233, 313 N.E.2d 14 (1974) (dismissal required when complainant failed to set forth reasons for requested reduction in value) *with Nucorp, Inc. v. Montgomery Cty. Bd. of Revision*, 64 Ohio St.2d 20, 412 N.E.2d 947 (1980) (complainant's failure to deliver certain required additional information 45 days after filing the complaint did not require dismissal). By the same token, R.C. 5715.19(D)'s requirement that the complainant state the amount of value at issue is jurisdictional here.

**{¶ 20}** Shinkle argues that a document that he attached to the complaint, which furnished reasons for changing the value, sufficed to "put the Board of Education on notice here." But supplying a *reason to change* the value does not equate to stating the *amount of the change* requested. Moreover, the omission of an amount means that the auditor could not know whether to notify the school board. As a result, the attachment to the complaint does not establish compliance with the requirement that the amount itself be stated.

**{¶ 21}** Even though the school board actually did file a countercomplaint in this case, that fact alone does not relieve Shinkle of the jurisdictional consequences of his omission. It is true that in *Knickerbocker*, 119 Ohio St.3d 233, 2008-Ohio-3192, 893 N.E.2d 457, actual notice to the board of education did

cure *the auditor's* failure to send notice to the correct address, but that was because there was no statutory obligation *on the complainant* to supply and use the proper address. *Id*. at ¶ 12. By contrast, the statute here explicitly requires the complainant to state the amount of value he is putting at issue—and only the complainant can supply that information.

**{¶ 22}** For all these reasons, the requirement to state the amount of value runs to the core of procedural efficiency and is therefore jurisdictional. As a result, Shinkle's failure to specify an amount in the complaint means that the complaint failed to invoke the BOR's jurisdiction. The BTA correctly held that the complaint for the "impound, storage, and trucking" parcel should be dismissed.

*2. The BTA acted reasonably and lawfully by holding Shinkle to the burden of proving a value different from that found by the county*

**{¶ 23}** "The fair market value of property for tax purposes is a question of fact, the determination of which is primarily within the province of the taxing authorities, and this court will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus. Although the BTA is responsible for determining factual issues, we " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' " *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14, quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001).

**{¶ 24}** In this case the BTA held that Shinkle, with respect to each of the properties at issue, failed to meet his burden of proving a value different from that found by the county. In so holding, the BTA correctly noted that " '[w]hen cases are appealed from a board of revision to the BTA, the burden of proof is on the

appellant, whether it be a taxpayer or a board of education, to prove its right to an increase [in] or a decrease from the value determined by the board of revision.' " *Shinkle v. Ashtabula Cty. Bd. of Revision*, BTA Nos. 2008-K-1756 through 2008-K-1761, 2012 WL 992339, *3, quoting *Columbus City School Dist. Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 90 Ohio St.3d 564, 566, 740 N.E.2d 276 (2001). By its nature, that burden calls for the BTA appellant to " 'come forward and demonstrate that the value it advocates is a correct value.' " *Shinkle* at *3, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 6. The BTA then proceeded to identify the central flaw in Shinkle's case: Shinkle pointed to defects that would tend to depress the value of his properties, but did not offer affirmative proof of a value different from that found by the county. *Shinkle* at *4-5.

{¶ 25} First we must decide whether the BTA acted reasonably and lawfully in excluding appraisal reports prepared by Ronald Damon and in discounting his testimony as an opinion of value. With respect to evaluating the credibility of witnesses, the BTA exercises its discretion as the finder of fact, and our review is constrained by the principle that "[a]bsent a showing of an abuse of discretion, the BTA's determination as to the credibility of witnesses and the weight to be given to their testimony will not be reversed by this court." *EOP-BP Tower* at ¶ 14. Under that standard, Shinkle has the burden of showing that the BTA's attitude is unreasonable, arbitrary, or unconscionable. *LTC Properties, Inc. v. Licking Cty. Bd. of Revision*, 133 Ohio St.3d 111, 2012-Ohio-3930, 976 N.E.2d 852, ¶ 13.

{¶ 26} We conclude that Shinkle has shown no abuse of discretion. Damon's credentials fall short of those that ordinarily qualify a witness to express an expert opinion of value. First, he was not shown to possess any special professional qualifications, such as a certification from the Division of Real Estate and Professional Licensing of the Ohio Department of Commerce or a designation

from the Appraisal Institute. Second, his educational background does not as a general matter dictate a finding that he possessed the relevant expertise. Third, his actual testimony did not demonstrate either a firm grasp of appraisal concepts generally or a properly focused application of appraisal methods in valuing Shinkle's properties. We emphasize that we are not holding that any particular credential or factor is a legal prerequisite; we hold only that the BTA did not abuse its discretion in deciding not to regard Damon as a valuation expert in this case.

**{¶ 27}** Next, we turn to whether Shinkle presented evidence apart from Damon's opinions that compelled the BTA to reach a determination different from the one that it made.[1] The standards are set forth in *Colonial Village, Ltd. v. Washington Cty. Bd. of Revision*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196. "The first rule is that the party challenging the board of revision's decision at the BTA has the burden of proof to establish its proposed value as the value of the property." *Id*. at ¶ 23. As a general matter, "[e]vidence of needed repairs, or the cost of needed repairs, while a factor in arriving at true value, will not alone prove true value." *Throckmorton v. Hamilton Cty. Bd. of Revision*, 75 Ohio St.3d 227, 228, 661 N.E.2d 1095 (1996). As the BTA correctly observed, Shinkle's evidence pointed to defects without establishing an actual value.

**{¶ 28}** Finally, under *Colonial Village*, we must also consider whether the BTA had a duty to perform an independent valuation, given that the evidence

---

1. Shinkle claims a due process violation, asserting that his appeal was "doomed to failure" because of a "system which arrives at contrived values and is determined to maintain them." We find, however, no deprivation of due process on the record before us. As for the assigned values being contrived, Ohio law sets forth the requirements to be followed in assessing real property, *see* R.C. Chapters 5713 and 5715 and Ohio Adm.Code Chapter 5703-25, and Shinkle has not rebutted the presumption that the auditor and the BOR fulfilled these legal duties, *see Colonial Village*, 123 Ohio St.3d 268, 2009-Ohio-4975, 915 N.E.2d 1196, ¶ 31. With respect to claiming a reduced value, Shinkle received the process that was due: he had two hearings, one at the BOR and one at the BTA, but failed both times to present reliable and probative evidence in support of a specific assertion of value.

might tend to negate the county's valuation. *Colonial Village* at ¶ 24-25. However, whether Shinkle's evidence did or did not negate the county's valuation is moot, because even if it did, the record plainly lacks sufficient evidence to permit the BTA to perform such a valuation of its own. *Id*. at ¶ 25; *Vandalia-Butler City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 130 Ohio St.3d 291, 2011-Ohio-5078, 958 N.E.2d 131, ¶ 24. For that reason, the proper course of action is exactly the one followed by the BTA: revert to the value found by the county. *Id*., citing *Simmons v. Cuyahoga Cty. Bd. of Revision*, 81 Ohio St.3d 47, 49, 689 N.E.2d 22 (1998).

### Conclusion

{¶ 29} For the foregoing reasons, the BTA properly ordered dismissal of Shinkle's appeal of the case involving the impound, storage, and trucking lot, and it acted reasonably and lawfully in adopting the BOR's valuation with respect to the other parcels. We therefore affirm the decision of the BTA.

Decision affirmed.

O'CONNOR, C.J., and PFEIFER, O'DONNELL, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Robert S. Wynn, for appellant.

Britton, Smith, Peters & Kalail Co., L.P.A., Karrie M. Kalail, Michael E. Stinn, and Peter T. Zawadski, for appellee Jefferson Area Local School District Board of Education.

_____