[Cite as *Gupta v. Lucas Cty. Bd. of Revision*, 2021-Ohio-332.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Umeshkumar Gupta                                  Court of Appeals No. L-20-1106

       Appellant                                  Board of Tax Appeals No. 2019-905

v.

 Lucas County Board of Revision                **DECISION AND JUDGMENT**

       Appellee                                   Decided:  February 5, 2021

* * * * *

Bertrand R. Puligandla, for appellant.

Julia R. Bates, Lucas County Prosecuting Attorney, John A.
Borell and Elaine B. Szuch, Assistant Prosecuting Attorneys,
for appellee.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

{¶ 1} In this property tax appeal, appellant, Umeshkumar Gupta, appeals the judgment of the Ohio Board of Tax Appeals, assessing a true value of $546,000 to appellant's real property.  Finding no error in the proceedings below, we affirm.

## A. Facts and Procedural Background

{¶ 2} On March 28, 2019, appellant filed a complaint with appellee, the Lucas County Board of Revision, challenging the valuation of his real property located at 5661 Mallard Pointe Lane, Sylvania, Lucas County, Ohio (the "subject property"). At the time the complaint was filed, the subject property was valued at $528,300. Appellant noted in his complaint that he purchased the subject property on March 30, 2018, for a sale price of $546,000. Based on his allegation that most of the comparable properties in Sylvania Township were valued at 75 percent of their sale price, appellant requested a reduction in the assessed value of the subject property to $425,000.

{¶ 3} A hearing on appellant's complaint was held on June 4, 2019. The following day, appellee issued its decision denying appellant's request for a reduction in the assessed value of the subject property. Thereafter, appellant filed a timely notice of appeal with the Ohio Board of Tax Appeals ("BTA"), and a hearing on the appeal was held on November 13, 2019. Appellant was the only witness to testify at the hearing.

{¶ 4} During his testimony, appellant acknowledged that he had purchased the newly constructed subject property on March 30, 2018, at a cost of $546,000. Nonetheless, appellant argued that the sale price should be disregarded for purposes of property valuation, because he purchased the subject property while under duress. Rather than look to the recent sale price to determine the subject property's value, appellant urged the BTA to consider his evidence of sales of comparable properties and to apply the same ratio of true value to sales price that was applied to those comparable properties.

2.

{¶ 5} During his testimony, appellant stated that he moved from Adrian, Michigan, into a condominium located approximately two miles from the subject property in September 2016. At the time, appellant only intended to live in the condominium for three to six months. Meanwhile, appellant was "desperately looking for a house," and "had to make a quick decision as the school year was approaching."

{¶ 6} Appellant hired the services of a real estate agent, and looked at several properties over the ensuing months. In October 2017, appellant found a property that suited him, and proceeded to make an offer to purchase the property, which was rejected after another potential purchaser outbid appellant. According to appellant, "the family was pretty upset about [being outbid]. As a matter of fact, I can remember that for at least three or four weeks I was pretty lost because I had this pressure from the family. * * * We wanted to provide a good house for our kids. So I was pretty devastated. To me it was almost like the end of the world."

{¶ 7} After being outbid in October 2017, appellant decided to place an offer on the subject property, which was listed for sale at a price of $559,900 and out of his price range. He originally offered to purchase the subject property for $520,000. Following negotiations, appellant and the seller agreed to a purchase price of $555,000, and both parties executed a purchase agreement reflecting that price, contingent upon appellant securing conventional financing. The purchase agreement was admitted into evidence at the BTA hearing.

3.

{¶ 8} Under the terms of the purchase agreement, closing was to occur on or before January 16, 2018. Appellant paid $3,000 in earnest money, plus a non-refundable deposit of $35,000 to the seller in order to guarantee payment for additional work on the basement of the subject property that was to be completed by seller prior to closing. Appellant testified that the seller insisted upon the deposit because he "wanted us 'knee deep' in the transaction so we did not walk away."

{¶ 9} On December 13, 2017, First Federal Bank approved a loan to be used by appellant to purchase the subject property. Six days later, an appraisal was performed in connection with the loan. An excerpt of the appraisal report that was prepared by the appraiser, which was entered into evidence at the BTA hearing, indicated the appraiser's determination that the subject property's value was $540,000. During the appraisal, the appraiser found that the square footage of the home was 300 square feet smaller than advertised, which led to a valuation that was lower than the purchase price agreed upon by appellant.

{¶ 10} After receiving the appraisal report, appellant contacted the seller and requested a modification to the terms of the purchase agreement, namely a reduction in the purchase price. Appellant and the seller ultimately orally agreed to change the purchase price to $540,000, at which time appellant provided the seller with his $35,000 deposit.

{¶ 11} Within a few days of modifying the purchase price, the seller contacted appellant and requested to close on the sale of the subject property on January 5, 2018,

4.

eleven days prior to the date of closing set forth in the purchase agreement. Appellant testified that the seller had not completed the remaining work on the basement at this time. Appellant rejected the seller's request to close early and, according to appellant, the seller informed him that "the deal is ended." Appellant stated that the seller "thought [$540,000] was not economically feasible for him at that point in time."

{¶ 12} Reportedly overwhelmed by the stress of the situation, appellant checked into the emergency room on December 25, 2017, where he remained under observation for four hours. One week later, appellant and seller resumed negotiations regarding the sale of the subject property, which culminated in the execution of a second purchase agreement on January 11, 2018. During the negotiations, appellant agreed to increase the purchase price to $550,000 and forego some of the features that were supposed to be added to the house under the original agreement. Appellant then decided to further eliminate certain costs, which brought the purchase price down to $546,000.

{¶ 13} Regarding his negotiation and eventual execution of the second purchase agreement, appellant testified that he "felt [he] had no choice because we were slowly getting sucked into the deal deeper and deeper and deeper, and we were just not given any choice." Appellant went on to explain that he was afraid that the seller would withdraw from the transaction and he would "lose the deal." Therefore, appellant agreed to move forward under the seller's proposed terms. As to the effect these negotiations had on his state of mind at the time, appellant stated that "it was emotionally very tormenting trying to deal with a full-time job, kids at home, living in the condo the past

5.

three to six months, all these breaches of the contract one after another, all the compromises one after another. I had no choice."

{¶ 14} Later in the hearing, appellant introduced a spreadsheet printout containing 12 properties, 6 of which appellant argued were comparable to the subject property. The spreadsheet includes several pieces of information including the true values assigned to each property by the Lucas County Auditor. Appellant testified that he assembled the spreadsheet using information he retrieved from the Lucas County Auditor's website. The six properties identified by appellant as comparable were each within four miles of the subject property, and four of them were sold in arm's-length transactions within one year of appellant's purchase of the subject property.

{¶ 15} Appellant testified that the sale prices of the properties he alleged were comparable to the subject property ranged from $506,282.70 to $520,528.75. Moreover, appellant determined that the true values on the comparable properties averaged 79 percent of the sale prices. By contrast, appellant noted that the true value assigned to the subject property was 97 percent of the sale price. Thus, appellant requested that the BTA determine that the true value of the subject property should be reduced to 79 percent of the purchase price, or $431,340.

{¶ 16} Following the BTA hearing, on May 28, 2020, the BTA issued its decision on appellant's request for a reduction in the true value of the subject property. The BTA rejected appellant's argument that his "pressing family obligations and difficulties" amounted to compulsion or duress, and instead found that appellant voluntarily purchased

6.

the subject property in an arm's-length transaction that established the appropriate measure of the property's true value. Therefore, the BTA concluded that appellant's purchase price, $546,000, constitutes the true value of the subject property. Moreover, the BTA rejected appellant's argument of the subject property's true value based upon the comparable properties contained in appellant's spreadsheet, after concluding that the properties selected by appellant were not comparable because they varied "by age, date of sale, and square footage, and number of bedrooms, bathrooms, and floors. No adjustments were made to account for differences with the home sitused on the subject property."

{¶ 17} Following the BTA's issuance of its decision, appellant filed his timely notice of appeal with this court. The matter was placed on our accelerated calendar, and is now decisional.

**B. Assignments of Error**

{¶ 18} On appeal, appellant assigns the following errors for our review:

I. The Board's decision is unreasonable and/or unlawful because the cases it relied upon to find no actual compulsion are inapplicable to this case.

II. The Board's decision is unreasonable and/or unlawful because it does not analyze whether actual compulsion existed under the "distortion-of-the-negotiation process" standard.

III.  The facts of this case demonstrate that the normal operation of the negotiation process was extremely distorted and caused actual compulsion.  Therefore, the Board's decision is unreasonable and/or unlawful.

IV.  The Board's ruling that Gupta's comparable-sales data were cherry-picked and unadjusted was unreasonable and/or unlawful.

{¶ 19} As appellant's assignments of error are interrelated, we will address them simultaneously.

## II.  Analysis

### A.  Standard of Review

{¶ 20} Appellant appealed appellee's determination of the subject property's value to the BTA.  Thus, it was appellant's burden to prove that he was entitled to a decrease in the value of the subject property that was determined by appellee.  *Shinkle v. Ashtabula Cty. Bd. Of Revision*, 135 Ohio St.3d 227, 2013-Ohio-397, 985 N.E.2d 1243, ¶ 24.  In meeting his burden, appellant is required to "'come forward and demonstrate that the value it advocates is a correct value.'"  *Id.*, quoting *EOP-BP Tower, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 106 Ohio St.3d 1, 2005-Ohio-3096, 829 N.E.2d 686, ¶ 6.  The BTA has "wide discretion to determine the weight given to evidence and the credibility of witnesses before it."  *Witt Co. v. Hamilton Cty. Bd. of Revision*, 61 Ohio St.3d 155, 573 N.E.2d 661 (1991).

8.

**{¶ 21}** In reviewing decisions of the BTA that are appealed to this court, we are guided by the following language set forth by the Ohio Supreme Court in its decision in *Akron City School Dist. Bd. of Edn. v. Summit Cty. Bd. of Revision*, 139 Ohio St.3d 92, 2014-Ohio-1588, 9 N.E.3d 1004:

> The true value of property is a "question of fact, the determination of which is primarily within the province of the taxing authorities," and accordingly, we "will not disturb a decision of the Board of Tax Appeals with respect to such valuation unless it affirmatively appears from the record that such decision is unreasonable or unlawful." *Cuyahoga Cty. Bd. of Revision v. Fodor*, 15 Ohio St.2d 52, 239 N.E.2d 25 (1968), syllabus.

*Id.* at ¶ 9.

### B. The BTA's valuation of the subject property was not unreasonable or unlawful.

**{¶ 22}** In each of the four assignments of error in appellant's brief to this court, appellant argues that the BTA's valuation of the subject property was unreasonable or unlawful.

**{¶ 23}** Under the Ohio Constitution, "[l]and and improvements thereon shall be taxed by uniform rule according to value." Ohio Constitution, Article XII, Section 2. Likewise, R.C. 5713.01(B) requires county auditors to appraise real property "at its true value in money."

9.

{¶ 24} R.C. 5713.03 governs how the true value of real property is determined.  In relevant part, R.C. 5713.03 provides:

> In determining the true value of any tract, lot, or parcel of real estate under this section, if such tract, lot, or parcel has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time, either before or after the tax lien date, the auditor may consider the sale price of such tract, lot, or parcel to be the true value for taxation purposes.

{¶ 25} Construing the foregoing statutory language, the Tenth District identified "two rebuttable presumptions applied in valuation cases."  *Gallick v. Franklin Cty. Bd. of Revision*, 2018-Ohio-818, 108 N.E.3d 237, ¶ 28.  The first presumption is that the sales price of a recent arm's-length transaction "'[meets] all the requirements that characterize true value.'"  *Id.*, quoting *Cincinnati Sch. Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 78 Ohio St.3d 325, 327, 677 N.E.2d 1197 (1997).  Secondly, the Tenth District indicated that the above-quoted statutory language creates a rebuttable presumption that "'[t]he best evidence of the "true value of money" of real property is an actual, recent sale of the property in an arm's-length transaction.'"  *Id.*, quoting *Conalco, Inc. v. Monroe Cty. Bd. of Revision*, 50 Ohio St.2d 129, 363 N.E.2d 722 (1977), paragraph one of the syllabus; *accord Mann v. Cuyahoga Cty. Bd. of Revision*, 152 Ohio St.3d 197, 2017-Ohio-8820, 94 N.E.3d 529, ¶ 12 (clarifying that "a price from a recent arm's-length

sale is not conclusive evidence of a property's value but it nevertheless 'constitute[s] the best evidence of the property's value'").

{¶ 26} In its decision in *Terraza 8, L.L.C. v. Franklin Cty. Bd. of Revision*, 150 Ohio St.3d 527, 2017-Ohio-4415, 83 N.E.3d 916, the Ohio Supreme Court recognized the two rebuttable presumptions set forth above, and indicated that "the proponent of a sale is not required, as an initial matter, to affirmatively demonstrate with extrinsic evidence that a sale price reflects the value of the unencumbered fee-simple estate." *Id.* at ¶ 32. Rather, once the proponent of the sale price valuation provides "basic documentation of the sale," the property owner has "the burden of going forward with rebuttal evidence showing that the price [does] not, in fact, reflect the property's true value." *Id.*, citing *Cincinnati School Dist.* at 327-328. To satisfy this burden, the opposing party may present evidence showing that the sale was not at arm's length or not recent to the tax lien date. *Huber Heights City Schools Bd. of Edn. v. Montgomery Cty. Bd. of Revision*, 152 Ohio St.3d 182, 2017-Ohio-8819, 94 N.E.3d 515, ¶ 11. Where the opposing party fails to demonstrate a reason to disregard the sale price as an indicator of value, then the sale price is the best evidence of the property's true value. *Lunn v. Lorain Cty. Bd. of Revision*, 149 Ohio St.3d 137, 2016-Ohio-8075, 73 N.E.3d 486, ¶ 18.

{¶ 27} During the proceedings that took place before appellee and the BTA in this case, the purchase agreement evidencing appellant's recent purchase of the subject property for $546,000 was introduced into evidence without objection from appellant. Thus, appellant had the burden of going forward with evidence to demonstrate that the

11.

sale was not at arm's length or was not a recent sale. Because the parties do not dispute that the sale was recent enough to trigger the rebuttable presumption that the sale price constitutes the subject property's true value, the issue in this appeal is whether appellant's evidence demonstrated that the sale was not at arm's length.

{¶ 28} In *Walters v. Knox Cty. Bd. of Revision*, 47 Ohio St.3d 23, 546 N.E.2d 932 (1989), syllabus, the Ohio Supreme Court held that "[a]n arm's-length sale is characterized by these elements: it is voluntary, i.e., without compulsion or duress; it generally takes place in an open market; and the parties act in their own self-interest." The parties to the transaction at issue here were acting in their own self-interest, and the transaction took place in an open market. Appellant does not dispute those elements. Instead, appellant contends that his purchase of the subject property was involuntary because it was the result of compulsion or duress.

{¶ 29} During the BTA hearing, appellant testified that he felt like he had no option other than purchasing the subject property once he entered into the first purchase agreement. Appellant's pressured situation was brought about by his family being upset that they were outbid on the first property they attempted to purchase after moving to Ohio from Adrian, Michigan. The situation was made worse by the fact that appellant's children were in high school and he did not want them to finish their high school education while living in a condominium. Appellant testified that he was "pretty devastated" by the situation, and indicated that he felt like it was "almost like the end of the world." Additionally, appellant testified that the seller intentionally applied pressure

by forcing appellant to make a large nonrefundable deposit that would put appellant "knee deep" in the transaction.

{¶ 30} In its decision, the BTA noted its consideration of appellant's testimony and documentary evidence on the issue of compulsion and duress, and concluded that appellant was under "pressing family obligations and difficulties" during the negotiation process. Nonetheless, the BTA determined that appellant failed to prove that his purchase decision was the product of compulsion or duress sufficient to vitiate the arm's-length nature of the transaction.

{¶ 31} Having reviewed the record evidence in its entirety, we cannot affirmatively conclude that the BTA's decision is unreasonable or unlawful. While appellant's stress level was obviously high during the negotiations that led to his purchase of the subject property, most of that stress was brought on by his own circumstances, not by pressure from the seller. Moreover, appellant was in no way compelled to agree to the terms proposed by the seller. Indeed, the seller even attempted to terminate the agreement at one point, yet appellant persisted with negotiations that culminated in the execution of the second purchase agreement at a lesser price than that agreed upon in the initial purchase agreement. While it is true that seller required appellant to make a sizable nonrefundable deposit before agreeing to appellant's terms, this requirement was reasonable in light of the additional work the seller was facing prior to closing on the sale of the subject property, and appellant was free to walk away from the deal if he viewed the deposit as oppressive. In short, the evidence presented by

13.

appellant supports the BTA's determination that appellant's purchase of the subject property was voluntary, and not a result of compulsion or duress.

{¶ 32} In his assignments of error, appellant contends that the BTA erroneously valued the subject property in accordance with the rebuttable presumption that his purchase price represents the true value of the subject property. Appellant contends in his first assignment of error that the BTA relied upon distinguishable cases to find that no compulsion exists here. However, as noted above, the BTA did not rely upon cases in order to find no compulsion. Rather, it looked to the evidence presented by appellant, and determined that no compulsion existed based upon that evidence. Thus, there is no merit to appellant's argument, and we find his first assignment of error not well-taken.

{¶ 33} In his second assignment of error, appellant contends that the BTA's decision was unreasonable and/or unlawful because it failed to account for the seller's distortion of the negotiation process. Relatedly, in his third assignment of error, appellant argues that the seller's distortion of the negotiation process caused actual compulsion in this case, thereby rebutting the presumption that the sale price of the subject property is the property's true value. While acknowledging that he was motivated to purchase the subject property by his "urgent desire to obtain a home," appellant asserts that it was seller's conduct during negotiations, not his sense of urgency brought about by family pressures, that compelled him to purchase the subject property. According to appellant, the BTA "failed to examine whether the normal operations of the negotiations process were distorted, thereby causing actual compulsion."

14.

{¶ 34} Our review of the BTA's decision reveals that the BTA explicitly considered appellant's compulsion argument in light of the evidence presented at the hearing.  In its decision, the BTA found appellant's "issues with the [seller] to be equally unpersuasive" as it related to appellant's compulsion argument.  The BTA noted that the purchase price of the subject property was modified several times to meet the parties' requirements.  The BTA also looked to email exchanges between appellant and the seller, which were submitted by appellant at the hearing, and found that appellant presented as a "capable negotiator and willing to reject the [seller's] demands when he believed it was appropriate."  We have reviewed these emails, and we too find that they belie appellant's assertion that he was a hostage to the transaction because of seller's conduct.

{¶ 35} In light of the foregoing, it is clear that the BTA did, in fact, consider and reject appellant's argument that the seller's conduct distorted the negotiation process and compelled appellant to purchase the subject property.  Therefore, we find no merit to appellant's contention, under his second assignment of error, that the issue was not addressed by the BTA.  Further, we find that the BTA's rejection of appellant's compulsion argument was not unreasonable or unlawful, as the evidence on which it relied to reach its conclusion supports the finding that appellant's purchase of the subject property was not compelled by the seller.  Accordingly, we find appellant's second and third assignments of error not well-taken.

{¶ 36} In his fourth assignment of error, appellant argues that the BTA's rejection of the comparable sales data he introduced into evidence at the hearing was unreasonable

15.

and/or unlawful. In its decision, the BTA found that the comparable properties selected by appellant varied from the subject property on a number of material characteristics including age of the property, the date of sale, the properties' square footage, and the number of bedrooms, bathrooms, and floors. Because appellant failed to adjust for all of these variables, opting instead to simply compare the properties by their price per square foot, the BTA concluded that the comparable sales data provided by appellant did not rebut the presumption that the sale price of the subject property was the best indicator of its true value.

{¶ 37} Upon consideration of the sales comparison evidence submitted by appellant, we cannot say that the BTA improperly rejected appellant's proposed value for the subject property under the sale comparison approach. As noted by the BTA, the sales prices relied upon by appellant did not fully account for the differences between the allegedly comparable properties and the subject property. Appellant insists that his price per square foot figure adequately accounted for these differences, but we fail to see how such a calculation fully accounts for variables such as age of property, date of sale, number of bedrooms, number of bathrooms, or number of floors. At best, the price per square foot adjustment may account for differences in the overall size of the properties. Therefore, we do not find that the BTA's rejection of the true value proposed by appellant under the sales comparison approach was unreasonable or unlawful.

{¶ 38} Accordingly, appellant's fourth assignment of error is not well-taken.

16.

## III. Conclusion

**{¶ 39}** In light of the foregoing, the judgment of the Ohio Board of Tax Appeals is affirmed. The costs of this appeal are assessed to appellant under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

Christine E. Mayle, J.

Gene A. Zmuda, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.